**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LAMONT ERIK CARTER, | Civil Action No. 18-12469 (FLW) (ZNQ) |
| Plaintiff, | |
| v. | |
| N.J. DEPARTMENT OF HUMAN SERVICES, et al., | **OPINION** |
| Defendants. | |

**WOLFSON, Chief Judge**:

In this case, pro se plaintiff Lamont Erik Carter ("Plaintiff"), sues his former employer, the New Jersey Department of Human Services ("Defendant"),[1] alleging failure to promote, failure to accommodate, retaliation, and termination of employment based upon racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42. U.S.C., §§ 2000, et seq., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, et seq. Defendant moves for summary judgment on all claims. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.   FACTS & PROCEDURAL HISTORY

The following facts are drawn from Defendant's Stipulation of Undisputed Material Facts ("SUMF").[2]

---

[1] In an Order dated April 18, 2019, the Court dismissed Denise Meckel, John Karl, Susan Vybiral, Cathleen Misawic, and Pamela Conner ("Individual Defendants") from this case.

[2] Pursuant to Local Civil Rule 56.1(a), Plaintiff, as the opponent of the summary judgment motion, furnish this Court in its "opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed,

A. **Promotion Process**

Plaintiff worked as an Information Specialist for the Defendant beginning in 2004. SUMF ¶ 5. In January 2010, Defendant promoted Plaintiff to the position of Technical Support Specialist 2. Id. at ¶ 6. In July 2016, Defendant had posted a job opportunity for a promotional or lateral move for the position of Technical Support Specialist 1. Id. at ¶ 15. Defendant's hiring process included a three-person panel, comprised of William Caldwell, Susan Vybiral, and Christine Boriolo, to interview applicants. Id. at ¶ 16. On October 17, 2016, after Plaintiff submitted his cover letter and resume, the panel interviewed Plaintiff for the position. Id. at ¶ 17. On October 20, 2016, after submitting her cover letter and resume, the panel interviewed Cathleen Misawic for the position. Id. at ¶ 19. Of the three candidates interviewed, Plaintiff scored the lowest during the interview. Id. at ¶ 20. On November 2, 2016, Mr. Caldwell and Ms. Vybiral selected Ms. Misawic for the position. Id. at ¶ 21. They determined that Ms. Misawic's knowledge and experience made her the most qualified. Id. Neither Plaintiff nor Ms. Misawic had experience with terminating telecommunication wiring, a requirement for the Technical Support Specialist 1 position. Id. at ¶ 23.

B. **Disciplinary Actions**

From 2015 to 2017, Plaintiff had a series of disciplinary incidents. After Plaintiff drove a state car without a court-mandated interlock device on a suspended driver's license, and subsequently failed to notify management of his conduct, he entered into a Disciplinary Action

---

stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Plaintiff did not do so. Rather, in the entirety of his Opposition, Plaintiff only states that he is Black/African American, over 40 years old, and a disabled veteran. Opp'n Mot. Summ. J. Because Plaintiff has failed to adhere to L. Civ. R. 56.1(a), the Court will deem the facts as set forth in Defendant's Statement of Undisputed Facts admitted by Plaintiff.

Appeal Settlement Agreement in March 2015, that included a 45-day suspension.  Id. at ¶ 34.  On August 3, 2016, Plaintiff received a Preliminary Notice of Disciplinary Action that included allegations of chronic or excessive absenteeism or lateness, with a recommended three-day suspension.  Id. at ¶ 35.  On September 1, 2016, Plaintiff received an official reprimand for committing those violations and for conduct unbecoming of a State employee, and other causes. Id. at ¶ 36.  As a result, Plaintiff entered into another Disciplinary Action Appeal Settlement Agreement.  Id.  On September 2, 2016, Plaintiff received a Final Notice of Minor Disciplinary Action including charges of chronic or excessive absenteeism from work, but no action was taken because of Plaintiff's official remand received the day before.  Id. at ¶ 37.  On November 17, 2016, Plaintiff, again, received a Preliminary Notice of Disciplinary Action, charging Plaintiff with chronic or excessive absenteeism, unreasonable excuse for lateness, and other charges.  Id. at ¶ 38. A December 12, 2016 letter notified Plaintiff that he must provide medical documentation to use Sick Benefit Time immediately upon returning to work and before beginning the workday, and that failing to comply could result in disciplinary action.  Id. at ¶ 39.  On March 27, 2017, a Preliminary Notice of Disciplinary Action charged Plaintiff with unreasonable lateness.  Id. at ¶ 40.  On May 16, 2017, a Preliminary Notice of Disciplinary Action charged Plaintiff with violations stemming from insubordination when Plaintiff solicited opinions of his work assignments from others outside of his chain of command.  Id. at ¶ 41.

Plaintiff requested, was granted, and then exhausted his leave under the Family Medical Leave Act ("FMLA") beginning on May 24, 2017 and ending on August 15, 2017.  Id. at ¶ 42.  On July 7, 2017, Plaintiff submitted a signed "Request for Reasonable Accommodation Form" to work from home.  Id. at ¶ 43.  After Defendant engaged in the interactive process, Plaintiff's request to work from home was denied because the essential functions of Plaintiff's job required him to be

3

in the office.  Id. at ¶ 44.  In response to the question "Is there anything about the disability, the denial of the ADA request that you believe is race-related?,"  Plaintiff stated "No, no. I was – see, that's hard.  I want to say no, because it's a disability.  I don't know." Id. at ¶ 45.  When Plaintiff returned from his FMLA leave (which was exhausted on August 15, 2017) on August 23, 2017, a Preliminary Notice of Disciplinary Action issued when Plaintiff failed to provide the required medical documentation for multiple absences and unexcused partial absences between August 17-28, 2017.  Id. at ¶ 46.

During an August 31, 2017 staff meeting, Plaintiff behaved abusively when he used the "f" word, called his supervisor, Mr. Caldwell, a "senile old man," threw papers, and then left the meeting.  Id. at ¶ 47.  After a thorough investigation into the complaint of Plaintiff's behavior, the EEO investigator determined in her October 26, 2017 report that Plaintiff violated EEO policy.  Id. at ¶ 50.  After the EEO published its results on November 14, 2017, a 2nd Amended Preliminary Notice of Disciplinary Action issued based on several charges.  Id. at ¶ 51.  These charges included Plaintiff's abusive behavior during the August 31, 2017 staff meeting and chronic or excessive absenteeism.  Id.

On October 19, 2017, three of Plaintiff's pending disciplinary matters were brought to a full hearing before an impartial hearings officer, who made findings and recommendations, which resulted in an Official Reprimand, three-day suspension, and a ten-day suspension, respectively. Id. at ¶ 49.  A disciplinary hearing for Plaintiff was held on December 7, 2017, with evidence heard by an independent hearings officer, who recommended termination.  Id. at ¶ 55.  After being served with a notice, Defendant escorted Plaintiff out of its building.  Id. at ¶ 52.  Plaintiff's last day of employment with Defendant was on January 2, 2017.  Id. at ¶ 56.

### C.     Plaintiff's EEO and EEOC Charges

On November 7, 2016, Plaintiff filed a race discrimination complaint with the New Jersey Office of Equal Employment Opportunity ("EEO"), alleging that a false discipline charge was made against him on October 11, 2016, by Susan Vybiral and John Karl.[3]  Id. at ¶¶ 26-27.  In the complaint, Plaintiff also charged Defendant with unlawful employment discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), for failure to promote based on race and reprisal (N.J.S.A. 10:5-12(a) and (d)), and the denial of a job title change based on race and reprisal in violation of Title VII.  Id.; Pl. Ex. B, at 3-4.  Plaintiff claimed that this alleged discrimination resulted in the denial of his promotion in November 2016.  Id.  On December 8, 2016, an EEO investigator interviewed Plaintiff regarding his allegations.  Id. at ¶¶ 30, 32.  After a complete investigation, the EEO investigator could not substantiate any of Plaintiff's allegations. Id. at ¶ 33.

On February 3, 2017, Plaintiff filed a complaint with the New Jersey Division on Civil Rights ("DCR"), alleging that Defendant did not promote him because of his race.  Id. at ¶ 9. Plaintiff withdrew this complaint from the DCR on February 28, 2018.  Id. at ¶ 10.  Relevant here, on May 29, 2018, Plaintiff filed a charge against Defendant with the federal Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation ultimately leading to his termination, in violation of Title VII.  Id. at ¶¶ 12-13.  Just a few days later, on June 4, 2018, the EEOC issued Plaintiff a Notice of a Right to Sue Letter, stating that the EEOC was

---

[3] The basis of the discipline charge in the EEO complaint was an internal complaint filed by Karen Foma, Supervisor of the Clinical and Care Management Unit, to Plaintiff's supervisor, claiming that Plaintiff prevented an employee of her unit from doing her work.  SUMF ¶ 28.  This complaint resulted in issuing Plaintiff a disciplinary charge (Preliminary Notice of Disciplinary Action) for conduct unbecoming of a state employee.  Id. at ¶ 29.  The charge was later retracted in November 2016.  Id.  On November 18, 2016, Plaintiff was served with a Notice of Preliminary Discipline for lateness (which was held in abeyance pending the EEO complaint).  Id. at ¶ 32.

closing its file on his charge because it was "unable to conclude that the information obtained established violations of the statutes." Id. at ¶ 14.

In the instant matter, Defendant moves for summary judgment on all of Plaintiff's claims. While Plaintiff opposes the motion, as indicated earlier, his Opposition consists of no more than three sentences, identifying himself as an African American, who is over 40 years old and a disabled veteran.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the moving party will bear the

burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." Id. at 331.  On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Id.  Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324; see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

III.    **DISCUSSION**

A.    **ADA Claim**

In his Complaint, Plaintiff asserts, by marking the box "Failure to accommodate my disability," a claim against Defendant for failure to accommodate his disability under the ADA. No other facts were alleged. The ADA both prohibits employers from discriminating against disabled employees and requires them to make reasonable accommodations for disabled employees to perform their job. 42 U.S.C. §§ 12101, et seq. An employer who fails to provide such a reasonable accommodate violates the ADA. Id.

**1.   Failure to Provide Sufficient Evidence**

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Techs., 134 F.3d 576, 580 (3d Cir. 1998). A plaintiff who completely fails to provide proof of an essential element of his/her case cannot show a genuine issue of material fact. Celotex, 477 U.S. at 322-23; Katz, 972 F.2d at 55.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Courts apply a two-part test to determine whether a plaintiff is a "qualified individual" under the ADA. First, the court must analyze whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Gaul, 134 F.3d at 580 (quoting 29 C.F.R. § 1630 app. at 353 (1997)). Next, the court must assess "whether or not

the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. (quoting 29 C.F.R. § 1630 app. at 353). A plaintiff bears the burden of identifying the existence of a reasonable accommodation. Fogleman v. Greater Hazleton Health Alliance, 122 F. App'x 581, 585-86 (3d Cir. 2004). A plaintiff who completely fails to provide proof of an essential element of his/her case cannot show a genuine issue of material fact. Celotex, 477 U.S. at 322-23; Katz, 972 F.2d at 55.

Plaintiff here fails to identify the ADA as a basis for his failure to accommodate claim against Defendant. Compl. 3; Def. Ex. A, at 3. Additionally, he presents no facts, let alone evidence, related to a claim of disability discrimination, or Defendant's failure to reasonably accommodate his disability. Compl. 2-3; Def. Ex. A, at 5-6. Indeed, the Court cannot even discern Plaintiff's disability from his Complaint. Because Plaintiff does not adequately establish any of the essential elements required for a prima facie case of disability discrimination under the ADA, Plaintiff's ADA claim suffers from an insufficient evidentiary basis on which a reasonable jury could find for Plaintiff. Fed. R. Civ. P. 56(c); Kaucher, 455 F.3d at 423. Therefore, his ADA claim is dismissed.

### 2. Failure to Exhaust Administrative Remedies

Plaintiff's ADA claim fails for another reason. A plaintiff cannot proceed in federal court with an ADA claim without first exhausting administrative remedies by timely filing an EEOC charge. "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). "A plaintiff's claim [brought in the

district court] must thus fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" Id. (quoting Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)). The defendant bears the burden of showing the affirmative defense of failure to exhaust administrative remedies. Slingland v. Donahoe, 542 F. App'x 189, 191 n.3 (3d Cir. 2013).

In addition, to pursue a private action under Title VII or the ADA, a plaintiff must file his complaint within ninety days of receipt of the notice of right to sue from the EEOC. 42 U.S.C. § 2000e-5(f)(1); Edwards v. Bay State Milling Co., 519 F. App'x 746, 748 (3d Cir. 2013). "The ninety-day period for filing a private action after receiving a right to sue letter is treated as a statute of limitations issue and is strictly construed." Williams v. Kaztronix, No. 13-652, 2014 U.S. Dist. LEXIS 41147, at *11 (D.N.J. Mar. 26, 2014) (citing Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001)); see also Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239-40 (3d Cir. 1999). "[A] complaint filed 'even one day beyond the ninety day window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement.'" Williams, 2014 U.S. Dist. LEXIS 41147, at *11 (quoting Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999)). The defendant bears the burden of proof to establish the affirmative defense that plaintiff filed suit after the expiration of the 90-day time period. Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 108 (3d Cir. 2003).

Even if Plaintiff has presented sufficient facts or evidence to support his claim, the Court must nevertheless dismiss his claim for failure to exhaust administrative remedies. Plaintiff has not shown that he specifically complained of disability discrimination in his EEOC charge.[4] Pl.

---

[4] The Third Circuit has instructed that the scope of an EEOC charge is to be liberally construed. See Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir.1978) ("[C]harges are most often drafted by one who is not well versed in the art of legal description. . . . [T]he scope of the original

Ex. B, at 15; Def. Ex. I, at 1.  Rather, Plaintiff only checked off in his EEOC complaint that the basis of the alleged discrimination was race and retaliation, and not disability.  Id.  Furthermore, when Plaintiff received his June 2018 EEOC letter of dismissal and notice of rights, it was only regarding "alleged employment discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964."  Pl. Ex. C, at 1; Def. Ex. J, at 1.

Accordingly, because Plaintiff has failed to produce any facts supporting his ADA claim and has failed to exhaust his administrative remedies, that claim is dismissed.

### A. **Plaintiff's Title VII Claims**

#### 1.   **Failure to Promote Claim**

Plaintiff also alleges that Defendant violated Title VII by failing to promote him because of his race, and retaliating against him for engaging in the protected activity of filing an EEO complaint.  SUMF ¶¶ 9, 21, 26-28; Compl. 6.  Title VII prohibits employment discrimination based on race.  42 U.S.C., §§ 2000, et seq.  An employer who fails to promote an employee because of his race, or who retaliates against an employee for engaging in a protected Title VII activity, violates the statute.  Id.  To establish a prima facie case of discrimination in a failure to promote context, Plaintiff must prove that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was rejected despite his qualifications; and (4) after his rejection, a similarly situated individual from a non-protected class was promoted, or the position remained vacant, and the employer continued to search for other applicants with plaintiff's qualifications.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  A plaintiff who completely fails to provide proof of an

charge should be liberally construed.").  Even when liberally construed, Plaintiff's EEOC charge did not include a claim of disability discrimination or a failure to accommodate a disability.

essential element of his/her case cannot show a genuine issue of material fact.  Celotex, 477 U.S. at 322-23; Katz, 972 F.2d at 55.

Here, Plaintiff identifies as Black/African American and as such, he belongs to a protected class, thereby satisfying the first prong.  Br. Supp. Def.'s Mot. Summ. J. 17; Opp'n Mot. Summ. J.  Defendant also concedes on this motion that Plaintiff satisfies the second and third prongs.[5]  Br. Supp. Def.'s Mot. Summ. J. 17.  Plaintiff provides no evidence, and therefore cannot establish the fourth prong, that he and Ms. Misawic were similarly situated.

To satisfy the fourth prong of the prima facie case, Plaintiff must show that "under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position."  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). This prong "requires an inquiry into the relative qualifications of the plaintiff and the employee who actually received the promotion.  "For a plaintiff to be considered similarly qualified to employees promoted in his stead such that a factfinder could reasonably infer discriminatory failure to promote, he must be at least as qualified as the candidate chosen in [his] place."  Carmichael v. Thomson, No. 14-3323, 2018 U.S. Dist. LEXIS 166260, at *35-36 (D.N.J. Sept. 27, 2018) (citations omitted) (internal quotation marks omitted).

Both Plaintiff and Ms. Misawic were employees within the New Jersey Department of Human Services.  SUMF ¶¶ 5-6.  Ms. Misawic was serving as a Technical Specialist 2 and Plaintiff was serving as a Technical Network Specialist.  Def. Exs. L, at 2, N, at 2.  Even assuming, arguendo,

---

[5] With respect to the second prong, I note that neither Plaintiff nor Ms. Misawic had experience with terminating telecommunication wiring, a requirement for the Technical Specialist 1 position. SUMF ¶ 23.

that both candidates had similar qualifications, and that it could be inferred that Plaintiff was at least as qualified as Ms. Misawic,[6] both candidates were not similarly situated.

"A plaintiff may satisfy the fourth factor in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by supervisors suggesting racial animus." Baldwin v. Gramiccioni, No. 16-1675, 2019 U.S. Dist. LEXIS 89616, at *23-24 (D.N.J. May 29, 2019) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002); Golod v. Bank of Am. Corp., 403 F. App'x 699, 702-03 n.2 (3d Cir. 2010) (stating that allegations "of similar racial discrimination of other employees," or allegations of discrimination "from statements or actions by [the plaintiff's] supervisors suggesting racial animus" can support an inference of discrimination). "More specifically, when presenting comparator evidence, on summary judgment, a plaintiff must submit evidence that [he] is 'similarly situated' to [his] comparators and that these employees have been treated differently or favorably by their employer." Baldwin, 2019 U.S. Dist. LEXIS 89616, at *23 (citing Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003); Andy v. UPS, No. 02-8231, 2003 U.S. Dist. LEXIS 25193, at *33 (E.D. Pa. Oct. 28, 2003); Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998)). "Significantly, [s]imilarly situated means similar in all relevant respects. This includes similarities between the requirements, duties and responsibilities of the respective jobs, but also similarity of the conduct (or misconduct) in which each employee engaged." Baldwin, 2019 U.S. Dist. LEXIS 89616, at *23-24 (citations omitted) (internal quotation marks omitted).

---

[6] At the prima facie stage, the court views plaintiff's qualifications objectively, requiring, at a minimum, the experience and education necessary to be a viable candidate for the position. Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995).

Here, prior to interviewing for the position, Plaintiff already had a serious disciplinary violation, which resulted in a Disciplinary Action Appeal Settlement Agreement in March 2015 that placed Plaintiff on a 45-day suspension.  SUMF ¶ 34.  Plaintiff did not submit any evidence that Ms. Misawic had a similar disciplinary history that would make them both similarly situated as to misconduct committed in the past, despite their difference in race.  Therefore, they were not, in at least one significant aspect, similarly situated.  Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009) ("While similarly situated does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects.") (citations omitted) (internal quotation marks omitted).

Even if Plaintiff established a prima facie case for failure to promote, Plaintiff's claim fails because he does not present any evidence that "Defendant['s] reasons for its actions are merely a pretext for discrimination."  Dooley v. Roche Labs., Inc., No. 04-2276, 2007 U.S. Dist. LEXIS 10467, at *18 (D.N.J. Feb. 15, 2007); Hellman v. Am. Water Works Serv. Co., No. 1:17-cv-12961, 2020 U.S. Dist. LEXIS 79501, at *25 (D.N.J. May 6, 2020).  When attempting to show pretext via his own qualifications or that of the selected candidate, plaintiff should provide evidence beyond his own opinion as to his own qualifications or those of the selected candidate.  Jackson v. Trump Entm't Resorts, Inc., 149 F. Supp. 3d 502, 509 (D.N.J. 2015) ("[A] plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment."); In re Carnegie Ctr. Assocs., 129 F.3d 290, 298 (3d Cir. 1997) (stating the employer's entitlement to establish job requirements and the plaintiff's requirement to offer more than his own opinion that he is qualified); Hellman, 2020 U.S. Dist. LEXIS 79501, at *26 ("[P]laintiffs generally must offer evidence demonstrating the qualifications of other promoted candidates.") (citing Baldwin, 2019 U.S. Dist. LEXIS 89616, at *37).

Here, Plaintiff does not provide even a scintilla of evidence regarding the qualifications of Ms. Misawic or that they were inferior to his.  Rather, he solely states in his Complaint for employment discrimination that "[he] was the most qualified candidate" and that "[t]he promotion was given to [a] less qualified white female candidate."  Compl. 5.  Plaintiff testified in his deposition that while he believed he possessed superior qualifications to Ms. Misawic, he admittedly knew nothing about the qualifications she possessed or how they differed from his own. SUMF ¶¶ 24-25.  See Robinson v. Matthews Int'l Corp., 368 F. App'x 301, 306 (3d Cir. 2010) ("[S]imply because [the plaintiff] thinks he is more qualified . . . does not entitle him to the position nor show discriminatory animus on the part of [the defendant].");  Hellman, 2020 U.S. Dist. LEXIS 79501, at *24 (finding that plaintiff did not "present an issue of material fact as to [her discrimination] claim, because she fail[ed] to offer evidence other than her own opinion regarding her qualifications for the position").

Although Plaintiff can criticize Defendant's decision to promote Ms. Misawic, who does not possess, for example his software qualifications, as unfair, or even unsound, the legal question before the Court is whether sufficient evidence exists that race discrimination is the real reason Defendant did not promote Plaintiff.  See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) ("The question is not whether the employer made the best, or even a sound . . . decision; it is whether the real reason is race [discrimination].") (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)).  There is no evidence presented by the Plaintiff, either alone or in combination with other evidence, that Defendant failed to promote Plaintiff because of his race.[7]

---

[7] Plaintiff's claim is likely further undermined by the fact that one of the decision-makers, Mr. Caldwell, is also African American.  SUMF ¶¶ 16, 21-22.  See Elwell v. PP&L Inc., 47 F. App'x

Finally, relevant in a failure to promote case, "[a]n employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions . . . ." Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1153, 1172 (D.N.J. 1996) (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981)).   "Unless there is evidence of discrimination, the court is neither permitted to get involved in the subjective [] decisions of the employer, nor set its own employment standards for the employer."   Jones v. Temple Univ., No. 12-5349, 2014 U.S. Dist. LEXIS 94253, at *28 (E.D. Pa. July 10, 2014) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992)).   "Stated differently, a plaintiff's subjective comparison of qualifications would not typically cast sufficient doubt on the employer's stated legitimate reasons for its selection."   Baldwin, 2019 U.S. Dist. LEXIS 89616, at *26; see also Luta v. Dep't of Health & Soc. Servs., 847 F. Supp. 2d 683, 691 (D. Del. 2012) (citing Bennun v. Rutgers State Univ., 941 F.2d 154, 170 (3d Cir. 1991) ("This Court has held that more than a denial of promotion as a result of a dispute over qualifications must be shown to prove pretext.").

Of the three candidates interviewed, Plaintiff scored the lowest.   SUMF ¶ 20.   Based on the hiring panel's determination, Ms. Misawic's knowledge and experience made her the most qualified.   Id. at ¶ 21. After reviewing the submitted application materials and interviewing each candidate, the hiring panel's subjective decision that Ms. Misawic was better qualified than Plaintiff for the position is entitled to deference.   "An interview is a subjective process.   How an employee presents himself or herself at an interview is often a determining factor in awarding a position."   Johnson, 949 F. Supp. at 1176.   "A plaintiff's own opinion or perception of her interview is irrelevant."   Hellman, 2020 U.S. Dist. LEXIS 79501, at *25 (citing Johnson, 949 F.

___

183, 189 (3d Cir. 2002) (recognizing that the decision-maker's membership in the same protected class as the plaintiff weakened the plaintiff's ability to raise an inference of discrimination).

Supp. at 1176).  "What is critical is the perception of the [i]nterviewers."  Johnson, 949 F. Supp. at 1176 (quoting Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991)).

Here, Plaintiff must point to evidence from which a fact-finder may reasonably have disbelieved Defendant's reason for its actions.  However, there is no evidence, either alone or in combination with other evidence, offered by Plaintiff, that Defendant failed to promote him because of his race.  Therefore, Defendant's Motion for Summary Judgment is granted as to Plaintiff's failure to promote claim.

## 2.  Retaliation Claim

In an employment discrimination claim for retaliation, the plaintiff must state a prima facie claim of retaliation.  Plaintiff must show that "(1) [he] engaged in a protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action."  Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017); Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008); Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (citing Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)).  A plaintiff who completely fails to provide proof of an essential element of his/her case cannot show a genuine issue of material fact.  Celotex, 477 U.S. at 322-23; Katz, 972 F.2d at 55.

A "plaintiff alleging retaliation has a lesser causal burden at the prima facie stage." Carvalho-Grevious, 851 F.3d at 259.  See, e.g., Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008) ("[T]he prima facie requirement for making a Title VII claim 'is not onerous' and poses 'a burden easily met'") (quoting Burdine, 450 U.S. at 253).

"[A] plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between [the] protected activity and the adverse [employment] action taken."  Marra v. Phila. Hous. Auth.,

497 F.3d 286, 302 (3d Cir. 2007) (quoting <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 284 (3d Cir. 2000)).  He can meet this burden by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, <u>Waddell v. Small Tube Prods., Inc.</u>, 799 F.2d 69, 73 (3d Cir. 1986), a pattern of antagonism, <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 921 (3d Cir. 1997), or temporal proximity "unusually suggestive of retaliatory motive."  <u>Shaner v. Synthes</u>, 204 F.3d 494, 505 (3d Cir. 2000).  "These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."  <u>Kachmar v. Sungard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997).

"Causation may be proven by 'circumstantial evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'"  <u>Grazioli v. Genuine Parts Co.</u>, 409 F. Supp. 2d 569, 582 (D.N.J. 2005) (quoting <u>Kachmar</u>, 109 F.3d at 177).  When the plaintiff provides indirect circumstantial evidence of discrimination for retaliation claims under Title VII, the Third Circuit applies the <u>McDonnell Douglas</u> framework.  <u>McKenna v. City of Phila.</u>, 649 F.3d 171, 178 n.7 (3d Cir. 2011); <u>see also</u> <u>Farrell</u>, 206 F.3d at 278-79.

Here, Plaintiff satisfies the first prong of engaging in a protected activity.  On November 7, 2016, Plaintiff filed a race discrimination complaint with the New Jersey of Office of Equal Employment Opportunity (EEO), alleging that Ms. Vybiral filed a false discipline charge against him on October 11, 2016.  SUMF ¶¶ 26-27.  In filing the complaint alleging employment discrimination, Plaintiff has established he engaged in a protected activity.  <u>Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.</u>, 450 F.3d 130, 134 (3d Cir. 2006) ("Title VII's anti-retaliation provisions protect employees who participate in Title VII's statutory processes or who otherwise oppose employment practices made illegal by Title VII.").

Plaintiff's denial of a promotion satisfies the second prong requiring an adverse employment action.  In Robinson v. City of Pittsburgh,120 F.3d 1286, 1296-1300 (3d Cir. 1997), the Third Circuit described the type of adverse employment decision actionable under Title VII. The adverse employment action must be "sufficiently severe as to alter the employee's 'compensation, terms, conditions, or privileges of employment,' or to 'deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee.'"  Id. (citing and quoting 42 U.S.C. § 2000e-2(a)(1) and (2)).

Having been rejected for the promotion, Plaintiff suffered an adverse employment action. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998); Barnes v. Nationwide Mut. Ins. Co., 598 F. App'x 86, 90 (3d Cir. 2015) ("Termination, failure to promote, and failure to hire all constitute adverse employment actions.").  See also 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). "Similarly, actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions."  Barnes, 598 F. App'x at 90.

However, Plaintiff fails to satisfy the third prong of demonstrating a causal connection between participation in the protected activity and the adverse employment action of being denied the promotion, such that a reasonable jury could link the employer's conduct to the retaliatory animus.  Farrell, 206 F.3d at 280-81; Shaner, 204 F.3d at 500-01.  See Moore v. Sec'y U.S. Dep't of Homeland Sec., 717 F. App'x 179, 185 (3d Cir. 2017) (stating that plaintiff must prove his protected activity was the but-for-cause of the adverse employment action) (citing Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)).

19

In this case, Plaintiff has provided two explanations as to why Defendant denied his promotion. First, Plaintiff asserted in his EEO complaint of race discrimination filed on November 7, 2016, that Ms. Vybiral and Mr. Karl "accused [him] of an infraction that could disqualify [him] for a promotion currently available for our department." SUMF ¶ 26. In short, it was Ms. Vybiral's racial animus against Plaintiff that led her to falsely accuse him of an infraction on October 11, 2016, in order to then pretextually deny Plaintiff the promotion in November 2016. Pl. Ex. B, at 1-4. However, Plaintiff has provided no evidence that Ms. Vybiral or any of the interviewers knew on October 11, 2016, when Ms. Vybiral lodged the infraction charge, that Plaintiff had applied for the promotion.[8] Despite Plaintiff's suggestion that Ms. Vybiral harbored racial animus towards Plaintiff, on October 17, 2016, the panel selected Plaintiff to interview for the position. SUMF ¶ 17. Furthermore, the misconduct claim underlying the infraction charge did not originate with Ms. Vybiral. Id. at ¶ 28. Karen Foma, Supervisor of the Clinical Care and Management Unit, submitted the charge to Ms. Vybiral on October 7, 2016. Id. Plaintiff has provided no evidence that Ms. Foma, in bringing the misconduct claim, was acting in furtherance of Ms. Vybiral's racial animus towards Plaintiff. As such, Plaintiff has failed to establish a causal connection between his participation in a protected activity and being subjected to an adverse employment action based on his first theory of causation.

Second, Plaintiff's February 3, 2017 DCR complaint alleges that Defendant did not promote him because of his race, because the denial of his promotion on or about November 10,

---

[8] Plaintiff submitted a cover letter and resume on July 13, 2016 expressing interest in the promotion. Def. Ex. L, at 1. However, he only addressed the cover letter "To whom it may concern." Id. In addition, Plaintiff states in his DCR complaint filed on February 3, 2017 that he applied for the promotion on August 1, 2016. Pl. Ex. B, at 3. None of these facts are indicative of Ms. Vybiral's knowledge of Plaintiff's application for promotion prior to filing a disciplinary charge against Plaintiff in October 2016.

2016, was retaliation for his filing of the EEO race discrimination complaint on November 7, 2016. SUMF ¶ 27; Pl. Ex. B, at 15. Plaintiff also fails to prove this theory of causation, because Mr. Caldwell and Ms. Vybiral identified Ms. Misawic as the candidate who was selected for the promotion on November 2, 2016, which was days before the EEO complaint was filed by Plaintiff. SUMF ¶ 21.

However, regardless of when Defendant denied Plaintiff's promotion, Plaintiff does not provide any direct or indirect evidence showing that his filing of the EEO charge was the "likely reason" for Plaintiff's adverse employment action. Indeed, he has not provided any evidence that Ms. Vybiral knew Plaintiff filed, or intended to file, an EEO charge against her before she made the decision to promote Ms. Misawic instead of Plaintiff. Dooley, 2007 U.S. Dist. LEXIS 10467, at *28-29 (noting that the decision-maker must know of the activity in order for the failure to promote to be the plausible result of retaliation); Carvalho-Grevious, 851 F.3d at 259 ("We conclude that at the prima facie stage the plaintiff must produce evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse [employment] action.") (quoting Kachmar, 109 F.3d at 177) (emphasis added) (internal quotation marks omitted). Rather than demonstrating a causal connection by proffering corroborative evidence of his "employer's inconsistent explanation for taking an adverse action, a pattern of antagonism, or temporal proximity unusually suggestive of retaliatory motive," Plaintiff only asserts that he believes that his filing of the EEO complaint resulted in the denial of his promotion. Gethers v. PNC Bank, No. 18-1293, 2020 U.S. App. LEXIS 15086, at *6 (3d Cir. May 12, 2020) (citing Carvalho-Grevious, 851 F.3d at 260) (quoting Shaner, 204 F.3d at 505) (internal quotation marks omitted); SUMF ¶ 27; Compl. 5; Pl. Ex. B, at 15. That is plainly insufficient to defeat summary judgment.

Next, a plaintiff may also support a claim for retaliation under Title VII with direct evidence of discrimination.  See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).  The direct evidence standard originates in the mixed-motive context, where an adverse employment decision "was the product of a mixture of legitimate and illegitimate motives."  Price Waterhouse, 490 U.S. at 247.  For such a mixed-motive claim, "direct evidence" constitutes evidence that is "so revealing of retaliatory animus that it is unnecessary to rely on the McDonnell Douglas [] burden-shifting framework, under which the burden of proof remains with the plaintiff."  Walden v. Georgia-Pacific Corp., 126 F.3d 506, 512 (3d Cir. 1997).

Here, even if Plaintiff could prove a prima facie case of retaliation, Plaintiff's claim fails for the same reason as his Title VII failure to promote claim.  Plaintiff does not proffer any "smoking gun" direct evidence that is "so revealing" of Defendant's retaliatory animus towards Plaintiff as the substantial factor for Ms. Misawic's promotion, rather than the legitimate reason proffered that she was the best qualified candidate.  Walden, 126 F.3d at 512-13; Armbruster v. Unisys Corp., 32 F.3d 768, 778-79 (3d Cir. 1994).  In short, because Plaintiff cannot show a causal connection between filing a complaint of employment discrimination and the denial of his promotion, and because he fails to provide sufficient evidence raising an inference that his protected activity likely resulted in his denial for promotion, Defendant is entitled to summary judgment.  Krouse v. Am. Sterilizer Co., 126 F.3d 494, 501 (3d Cir. 1997) (concluding that a defendant is entitled to summary judgment where a plaintiff is unable to establish a genuine issue of material fact concerning at least one element of the prima facie case).

## IV.    CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has failed to meet his burden of demonstrating that a genuine issue of material fact exists that Defendant violated Title VII by racially discriminating and retaliating against him.  Plaintiff's failure to accommodate claim under the ADA is also dismissed for the lack of administrative exhaustion and for failing to proffer any evidence of disability discrimination on Defendant's part.  Hence, the Court GRANTS Defendant's Motion for Summary Judgment.


**DATED**:  June 23, 2020                    /s/          Freda L. Wolfson
                                             Hon. Freda L. Wolfson
                                             U.S. Chief District Judge

23